In the Matter of the Estate of CHARLES MORATH, Deceased.

Surrogate's Court, Oneida County, July 31, 1925.

**Surrogate's court — reopening decree settling estate — decedent left written instrument lacking formality of being published and witnessed as will — heirs at law and next of kin, including petitioner, executed agreement for distribution of decedent's property in accordance with written directions in said instrument — order vacating decree of judicial settlement denied in absence of evidence indicating fraud.**

Petitioner's application to vacate and set aside a decree of judicial settlement made in the estate of his brother will be denied where it appears that the decedent, though leaving a written instrument lacking the formality of being published and witnessed as a will, died intestate; that the heirs at law and next of kin, including the petitioner, executed an agreement which, in substance, provided that the provisions of the instrument left by the decedent should be carried out in accordance with his wishes; that though it was optional with the petitioner and others to execute the instrument or to have the property distributed as provided by law, all the parties executed the agreement under such circumstances as preclude any indication of fraud, and that eighteen months elapsed from the date of the execution of the agreement to the occasion of final payment when the petitioner and others interested executed a general release upon receipt of the amounts designated by the decedent in the instrument left as his will.

APPLICATION to vacate and set aside decree of judicial settlement.

*Harry N. Garvey* [*Lee, Dowling & Brennan* of counsel], for the petitioners.

*Smith Johnson*, special guardian for the infants, James Morath and others.

*Miller & Hubbell*, for the administrator, respondent.

EVANS, S.:

Henry Morath one of the heirs at law and next of kin of the above named decedent has applied to this court to vacate and

set aside a decree of judicial settlement in this estate bearing date the 28th day of July, 1924. The facts on which this application is based are unusual and a decision was possible only after a hearing at which several witnesses were examined at considerable length.

The decedent was an unmarried man and died in the city of Rochester, N. Y., on the 19th day of February, 1923. He resided in the city of Utica where his body was brought for burial.

He left him surviving three brothers, Henry, George and Frank, one sister, Josephine E. Firsching, and five nephews and one niece, the children of Joseph Morath a deceased brother of the decedent.

The funeral was held at the residence of Frank Morath, No. 923 Whitesboro street, Utica, N. Y., after which the relatives returned for lunch.

At the request of Frank Morath they assembled in the parlor and he produced a document that he stated was a will of his brother Charles. He asked that someone read it aloud which was done by Rosina Morath a niece.

This instrument was in the usual form of a will in the handwriting of the decedent and signed by him. It contained an attestation clause with a blank space for witnesses. It bore no date except " A. D. 192- " which tends to show that it was written during or subsequent to the year 1920.

The instrument by its terms was clear and explicit. The language used gives evidence of careful preparation by a man of education and intelligence.

In substance the instrument dequeathed the sum of $500 each to his brother Henry, his sister Josephine Firsching, and to a sister-in-law Catherine Morath. The sum of $100 was bequeathed to his brother George, who is a Christian Brother now stationed at St. Joseph's Convent, Utica, N. Y. The sum of $300 each bequeathed to five nephews and two nieces. The sum of $50 each was bequeathed to four children named Norton. The sum of $100 was bequeathed to St. Joseph's Church, Utica, and the sum of $1,000 to the Wards of St. John's Orphan Asylum, Utica. All of the residue of real and personal property was devised and bequeathed to the brother Frank, who was named executor to act without bond.

It is conceded that the signature and entire body of the instrument is in the handwriting of the decedent.

At the conclusion of the reading of the instrument the observation was made by Lee M. Firsching (the husband of Josephine) that the paper bore no date and was not witnessed and was not a will. To this proposition Frank Morath agreed and something was said about employing an attorney. The evidence shows that the

relatives there assembled fully understood that the instrument was not a will.

Another meeting of the relatives was held at the residence of Frank Morath on February 28, 1923. There were present Henry Morath, Frank Morath, Josephine E. Firsching, Mary Morath, Francis Morath and Charles Morath all of the adult heirs at law and next of kin of the deceased with the exception of George Morath.

At this meeting an attorney procured by Frank Morath was present and had a proposed agreement to be signed by the adult heirs at law and next of kin of the decedent which in substance provided that the provisions of the instrument left by the decedent should be carried out in accordance with his wishes there expressed, and the property of his estate divided among the persons and institutions mentioned in the instrument.

This agreement was signed and acknowledged by those present and waivers executed permitting the appointment of Frank Morath as administrator of the estate.

Mr. Morath filed his petition and bond in the sum of $15,000.

The estate was administered in the usual manner and a decree of judicial settlement was signed by the late Surrogate JONES on July 28, 1924.

Thus it appears that seventeen months elapsed from the date of the execution of the agreement to the time of final settlement.

The account shows a gross estate amounting to $20,178.76.

The disbursements including funeral expenses, administration expenses, debts and administrator's commissions amounted to $2,706.27, leaving a net estate of $16,902.63.

The infants James, John and George Morath mentioned in the instrument left by the decedent were not parties to the agreement on account of their infancy. The amount designated in the instrument for each of said infants was $300 but by reason of the intestacy of the decedent each of said infants was paid his share according to the law of descent and distribution amounting to $563.42.

The sum of $2,391.80 was realized from the sale of real property in the State of Washington.

After the payment of legacies to persons and institutions mentioned in the instrument the sum of $13,504.17 represented the share of Frank Morath.

The petitioner Henry Morath alleges that he has been defrauded and deprived of his legal rights in this estate.

The power of the Surrogate's Court to grant the relief sought is contained in subdivision 6 of section 20 of the Surrogate's Court Act which provides that a surrogate may " open, vacate, modify, or set aside, or to enter as of a former time, a decree or order of his

court; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error or other sufficient cause."

It is obvious that the stability of a court requires that its judgments and decrees should not be disturbed except for sound reasons.

The petitioner asserts that at the time he executed the agreement with the other heirs at law and next of kin of the decedent, that he was ignorant of the amount of the estate. He claims that his brother Frank Morath was in possession of this information which was purposely withheld. There is no direct evidence of this but there is evidence that no inquiry as to the amount of the estate was made by the petitioner or by any of the parties to the agreement.

It is evident that the relatives of Charles Morath desired to give vitality and legal force to the instrument that he had prepared and which lacked the formality of being published and witnessed to make it a valid will. In this they displayed an unselfish spirit and a commendable sentiment toward the memory of their deceased brother. By the execution of the agreement they distributed the property of the decedent in accordance with his written directions.

The fact remains, however, that the decedent died intestate and it is with the rights of the petitioner as an heir at law and next of kin that we have to deal. The petitioner is a middle aged man of intelligence and fair education.

The instrument of February 28, 1923, was executed by the petitioner and the other heirs at law and next of kin at a meeting where they were all present with one exception. It was done under circumstances that would naturally create a full and free discussion among the relatives present. There was no secrecy and it was optional with the petitioner and the others to execute the agreement or to decline to do so and have the property distributed as provided by law.

The evidence is that this feature of the matter was fully explained to those assembled, by the attorney. Charles Morath a nephew of the decedent so testified and said that he understood the provisions of the agreement and that he was satisfied and had no desire to reopen the decree of judicial settlement. Francis Morath another nephew testified to substantially the same facts. The petitioner testified that at the time he executed the agreement, he understood that he was to receive $500 from the estate.

The inventory of this estate was taken May 10, 1923. The petitioner was duly notified and in company with his sister attended the appraisal. The appraisers in the presence and hearing of the petitioner called off the amounts shown by the bank books and these figures were set down in the inventory blank. The amounts shown by bonds and other securities were listed in the same

manner. There were some securities whose value could not at the time be ascertained with exactness but the approximate value of the estate was ascertained.

It is incredible that the petitioner could not with the information thus furnished, make a close estimate of the size of the estate.

The inventory was filed in the office of the surrogate on July 14, 1923. It was a public document and open for public inspection.

While it may be argued that the petitioner had released his rights in the estate for any amount in excess of $500, prior to the taking of the inventory, there was ample time for him to have repudiated the agreement. He did nothing and over a year later on July 19, 1924, he executed a general release and was paid the sum of $500.

There was no undue haste on the part of the administrator to pay off the petitioner and the others who were parties to the agreement. Nearly a year and a half had elapsed from the date of signing the agreement to the time when final payment was made. Haste and secrecy, two of the common badges of fraud, are lacking in this transaction.

The application to open and vacate the decree of judicial settlement in this estate is denied, with costs.

Decreed accordingly. _____